IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO BUENO,<br><br>  Plaintiff,<br><br>vs.<br><br><br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>  Defendant.<br>_____/ | CASE NO.  1:04-cv-05898 TAG<br><br>MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION<br><br>ORDER REMANDING CASE PURSUANT TO SENTENCE SIX OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING THE CLERK TO ENTER JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT |

Plaintiff Gilberto Bueno ("claimant" or "plaintiff") seeks  judicial review of an administrative decision denying his claim for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act").  Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").  Claimant filed his complaint on June 29, 2004 (Doc. 1), and his opening brief on June 13, 2005.  (Doc. 15).  The Commissioner filed her opposition to the appeal on July 18, 2005 (Doc. 16). Claimant filed a reply brief on August 2, 2005. (Doc 17).

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed before a United States Magistrate Judge.  (Docs. 5 and 8).  By an order dated May 31, 2005, this action was assigned to the United States Magistrate Judge for all further proceedings.  (Doc. 14).

**JURISDICTION**

On August 3, 2001, claimant filed his application for disability insurance benefits, alleging an inability to work due to an injured spinal cord, arthritis, and an inability to hear from his left ear.

1

(Administrative Record ("AR") 102, 111).  According to claimant, these conditions rendered him unable to lift heavy things or bend over quickly, and resulted in pain and left leg swelling.  (AR 111). Claimant's application was denied initially and on reconsideration (AR 91-94 and 96-99) and, on February 26, 2003, Administrative Law Judge ("ALJ") James P. Berry found that claimant was not disabled.  (AR 58-67).  The Appeals Council denied claimant's request for review on February 18, 2004 (AR 36-39), leaving the ALJ's decision of February 26, 2003, as the final decision of the Commissioner.  On April 15, 2004, counsel for claimant asked the Appeals Council to reopen its decision based upon medical records that had been submitted earlier, on January 16, 2004, but allegedly not considered by the Appeals Council.  (AR 6).  On May 21, 2004, the Appeals Council denied the request to reopen, having found that the additional medical records had indeed been considered (or returned as beyond the time-frame relevant to the ALJ's decision).  (AR 4-5). However, the Appeals Council did extend the time for claimant to file a civil action for an additional forty-five (45) days after claimant's receipt of its May 21, 2004 letter.  (AR 5).  On June 29, 2004, within this forty-five day period, claimant timely appealed to the district court pursuant to 42 U.S.C. § 405(g).  (Doc. 1).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both claimant and the Commissioner and will only be summarized here.

Claimant was born on February 4 in either 1954 (making him 49 years old at the time of the hearing on his matter) or 1959 (making him 44 years old at the time of the hearing).  (AR 292-93).[1] At the administrative hearing, claimant testified that he had been educated, in Mexico, through what would be the seventh year of elementary school in the United States (AR 292) and that he had crossed over to this country from Mexico on the evening of February 19, 1986.  (AR 292). Claimant's last day of work was on December 19, 2000, when he was injured while hanging poultry

---

[1] According to claimant, his mother under-stated his age when he lived in Mexico so that he would be allowed to attend school.  (AR 293).  Again according to claimant, the five-year difference was then carried over to his identification and residence card.  (AR 292-93).  In his application for disability insurance benefits, claimant continued to assert the younger, allegedly incorrect birth date of February 4, 1959.  (AR 102).  In his decision, the ALJ adopted the more recent birth date.  (AR 59).

2

at a Foster Farms poultry plant. (AR 293). Claimant stated that he had worked at Foster Farms for six and one-half years and, beforehand, had worked in the fields as a farm laborer picking grapes, tomatoes and onions, or hoeing and pruning in the cotton and chili fields. (AR 293-94, 304). According to claimant, his hearing loss began several years after he started work at Foster Farms. (AR 294). In addition to his hearing loss, claimant noted problems with the veins in his left leg, which cause his leg to become hot, itchy and painful, limiting his ability to stand and walk to just 15 or 20 minutes (AR 295-96), or to sit for about an hour (AR 302). Claimant also testified to pain in his lower back and to swelling in his feet such that at times he cannot wear socks. (AR 297-98). Finally, claimant testified to numbness from his right shoulder to his hand, and to pain in his left wrist. (AR 302). Claimant stated that he was taking no medications because he had finished all he had been given. (AR 303).

As to his daily life and activities, claimant testified that he normally sits on a sofa, then moves to a chair, then walks around a bit and little else. (AR 298). Claimant stated that he does no yard work, helps with little things in the kitchen, sweeps a little inside and outside, drives his wife to the grocery store and, if only a few items were needed, goes into the store with her, though he will take an electronic cart when staying longer. (AR 298-99, 303). Lastly, claimant testified that he speaks only three or four words of English, cannot read any English but can read and write in Spanish. (AR 300).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that claimant is not only unable to do his previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

///

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents claimant from performing work he has performed in the past. If claimant is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). See Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

///

///

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. See, 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-02 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting* Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).

///

## ALJ'S FINDINGS

**Step One**

The ALJ found at step one that claimant "has not engaged in substantial gainful activity since the alleged onset of disability." (AR 66).

**Step Two**

At step two, the ALJ determined that the claimant has a "severe" impairment in light of medical evidence indicating lumbar degenerative disease and hearing loss. (AR 60, 66).

**Step Three**

The ALJ next considered whether claimant's impairments, while severe, fit within the impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. See 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1 (Listing of Impairments).  Upon making the comparison, the ALJ concluded that claimant's impairments "do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4." (AR66).

**Step Four**

The ALJ observed that claimant had past relevant work as a poultry worker and farm worker, but that these jobs involved a "medium" level of exertion, more than the "light exertion" level to which claimant was currently limited. (AR 64).

**Step Five**

Having found that claimant could not perform his past relevant work as a poultry or farm worker, the ALJ next considered whether there were any jobs existing in significant numbers in the national economy which claimant could perform consistent with his residual functional capacity, age, education and work experience. (AR 64).  Based upon a lifting capacity of 20 pounds occasionally and 10 pounds frequently, and an ability to stand/walk/sit for six to eight hours in an eight-hour day - both such conditions having been presented to a vocational expert ("VE") at claimant's administrative hearing -  the ALJ adopted the VE's conclusion that claimant could perform work as an agricultural produce sorter (with 3,000 such jobs in California and 7,200 nationally) or as a worm packer (with 3,400 such jobs in California and 16,600 nationally). (AR 64-65).

**ISSUES**

Claimant's Opening Brief raised the following four issues for consideration[2]:

A. Whether the hypothetical question posed to the vocational expert was supported by the record to the extent it related to claimant's hearing loss.

B. Whether a medical expert should have been used to evaluate whether claimant's hearing loss fell within Listed Impairment 2.08.

C. Whether the ALJ's conclusion as to claimant's residual functional capacity was supported by substantial evidence.

D. Whether the ALJ properly considered the testimony of claimant.

This Court must uphold the Commissioner's determination that claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A. Hypothetical Question vis-a-vis Hearing Loss**

Claimant argues that - to the extent it related to his hearing loss - the hypothetical question posed to the vocational expert was not supported by the record, and that the ALJ should have used a consultative examiner or medical expert to present a better hypothetical that would have included all proper limitations. (Doc. 15 at p. 3).

As noted in the ALJ's written findings, claimant underwent an otolaryngologic examination on April 30, 2002 by E. David Manace, M.D. (AR 62, 251-57) and an additional examination by board certified otorhinolaryngologist Arthur C. Fenn, M.D. on October 1, 2002 (AR 62, 258-64). In addition to examining claimant, both Drs. Manace and Fenn reviewed an extensive number of medical files, including the records of otolaryngologist Ronald Ballecer, M.D. and numerous audiograms. (AR 251, 261). Both physicians concluded that claimant could work in a loud noise environment with ear protection. See AR 256-57 (when exposed to "high intensity noise," claimant should wear appropriate ear protection) and AR 264 (claimant can work "if he protects his ears from

---

[2] A fifth claim of error - that the ALJ was generally biased - was abandoned by claimant in his reply brief. (Compare Doc. 15 at pp. 6-7 with Doc. 17 at p. 2).

the loud noise with custom-fitted sound suppressors and ear muffs"). Claimant has cited no contrary medical opinions.

Consistent with the opinions of Drs. Manace and Fenn, the ALJ submitted the following hypothetical to the vocational expert: "[T]his individual must avoid exposure to loud noise without ear protection." (AR 305). The ALJ's hypothetical was consistent with the medical evidence and, therefore, supported by the record and substantial evidence. Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989)(a hypothetical is objectionable "'only if the assumed facts could not be supported by the record'")(*quoting* Sample v. Schweiker, 694 F.2d 639, 644 (9th Cir. 1982)). Moreover, while the etiology of claimant's hearing loss might have been complicated,[3] the ultimate limitation was not (i.e., wear ear protection when exposed to loud noise) and was presented to the vocational expert precisely as enunciated by two examining physicians.

**B.  ALJ's Failure to Use a Medical Expert to Evaluate Listing 2.08**

Claimant asserts that the ALJ should have used a medical expert to review the record and determine whether, at step three, claimant's hearing loss was a Listed Impairment under 20 C.F.R. Part 404, Subpt. P., App. 1, § 2.08 (hearing impairments). (Doc. 15 at p. 3).

However, the Social Security Administration regulations clearly state that medical expert opinions as to the ultimate conclusion of whether step three of the sequential analysis is satisfied are *not* essential. One regulation states: "Administrative law judges *may* also ask for and consider opinions from medical experts on . . . whether your impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart." 20 C.F.R. § 404.1527(f)(2)(iii)(emphasis added). "May" indicates that use of a medical expert for the step three analysis is permissive, not mandatory, at least absent an inconclusive record. See Maniaci v. Apfel, 27 F. Supp. 2d 554, 557 (E.D. Pa. 1998)("Where the record as it exists at the time of the administrative hearing fairly raises the question of whether a claimant's impairment is equivalent to a listing, a medical expert should evaluate it"). Another regulation states: "Although we consider opinions from medical sources on

---

[3] While claimant quotes Dr. Manace to the effect that claimant's hearing loss was of a "complex nature," (Doc. 15 at p. 3)(*quoting* AR 251), those words were used by Dr. Manace in the context of justifying the amount he intended to bill for his evaluation. (AR 251).

issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity (see §§ 416.945 and 416.946), or the application of vocational factors, *the final responsibility for deciding these issues is reserved to the Commissioner.*" See 20 C.F.R. § 416.927(e)(2)(emphasis added). Here, the Court notes that Listing 2.08 is entitled "*Hearing impairments* (**hearing not restorable by a hearing aid**)." 20 C.F.R. Pt. 404, Subpt. P, App. 1 at § 2.08 (bold font added). Given that both medical experts relied upon by the ALJ were of the view that claimant *was* a candidate for hearing aids (AR 256-57, 263), it appears that the administrative record was not at all inconclusive and that Listing 2.08 is inapplicable on its face.

Claimant also asserts that the ALJ improperly failed to include a rationale for his determination that claimant's hearing impairment did not meet or equal a Listed Impairment. (Doc. 15 at p. 3). On this point, Lewis v. Apfel, 236 F.3d 503 (9th Cir. 2001), is dispositive. In that case, as here, the ALJ identified the claimant's disorders and then said "[claimant] does not have an impairment or combination of impairments listed in or medically equal to one listed in the regulations." Id. at 512. Lewis contended that the ALJ erred by failing to elaborate on this determination. See id. at 512, 514. The court held it sufficient that the ALJ analyzed the evidence elsewhere in his written determination. Id. at 513. Here, likewise, the ALJ reviewed the nature and history of claimant's otolaryngologic examinations and, importantly under Listing 2.08, whether claimant was a candidate for hearing aid amplification. (AR 62). The Court finds that the ALJ's explanation was sufficient.

**C. Claimant's Residual Functional Capacity**

   **I. Lumbar Degenerative Disc Disease and New Evidence**

Claimant protests that the ALJ did not adequately take into account his "severe lumbar pathologies." (Doc. 15 at p. 3). Had he done so, according to claimant, the ALJ would have concluded that a "sedentary" rather than "light work" residual functional capacity existed. (Doc. 15 at pp. 3-4). Moreover, claimant asserts that medical reports submitted after the hearing should have been considered as further evidence of a sedentary status. (Doc. 15 at p. 5). Several such reports were submitted to the Appeals Council (AR 9-35) and one additional report was

included as two attachments to claimant's brief (Doc. 15, Attachments 1 and 2). However, the Appeals Council explicitly declined to consider reports dated after the administrative hearing, including a Questionnaire prepared by claimant's primary treating physician, Michael J. Esposito. M.D.. (AR 4-5, 37).

Excluding claimant's post-hearing reports, and given the administrative record before him, the ALJ's finding of a "light work" residual functional capacity was supported by substantial evidence.[4] However, a report attached to claimant's opening brief indicates that the administrative record was substantially incomplete. That report, again by claimant's primary treating physician, Dr. Esposito, references a number of diagnostic tests and procedures ordered by Dr. Esposito and performed upon claimant in 2002, none of which were in the record[5], and all of which help to detail the nature and extent of claimant's degenerative disc disease. (Doc. 15, Attachment 1 at pp.1-7). The herniated discs identified and discussed in these reports further explain Dr. Esposito's own conclusion that claimant is incapable of prolonged sitting and standing. (Doc. 15, Attachment 2 at

---

[4] On the incomplete medical records before him, the ALJ's determination that claimant had the residual functional capacity for "light" work (AR 64)("claimant is precluded from more than light exertion") was supported by substantial evidence. The ALJ called attention to the leg (varicose vein), back (lumbar degenerative disc disease) and related findings as reported by each of claimant's physicians and by independent examiners. These included the findings of (1) Michael J. Esposito, M.D., an orthopedic surgeon, who evaluated claimant on December 19, 2000 (AR 60, 197-201), (2) Troy Smith, M.D., who consultatively evaluated claimant on or about October 16, 2001 (AR61, 211-15), (3) Ernest Wong, M.D., a medical consultant who evaluated claimant's records on November 9, 2001 (AR 61, 218-27), (4) Fredric H. Newton, M.D., an Agreed Medical Examiner, who evaluated claimant in person on April 23, 2001 and wrote evaluative reports on May 2, October 17 and December 16, 2001 (AR 61, 228-40), and (5) Roger G. Nacouzi, M.D., who evaluated claimant in person on May 1, 2002 and wrote evaluative reports on May 1 and May 13, 2002 (AR 61, 243-50).

Among these reports, Dr. Smith concluded that claimant could sit, stand and walk for six hours in an eight hour workday (AR 215), Dr. Wong concluded that claimant could stand and walk for six hours in an eight hour workday, could also sit for six hours in an eight hour workday and had a "light" residual functional capacity (AR 219, 227), Dr. Newton concluded that claimant could perform janitorial work - a "light" job according to the ALJ - that would include sweeping, mopping, clean up, taking out trash and pushing a cart but that he could not perform his past relevant work (AR 229, 238), and Dr. Nacouzi opined that claimant should simply avoid prolonged standing as a "prophylactic recommendation." (AR 250).

Claimant's primary treating physician, Dr. Esposito, did not opine as to claimant's residual functional capacity until his post-hearing April 15, 2003 Questionnaire. (AR 273).

[5] The absence of claimant's diagnostic reports from the record is difficult to square with 20 C.F.R. § 404.1519m ("We will request the results of *any* diagnostic tests or procedures that have been performed as part of a workup by your treating source or other medical source and will use the results to help us evaluate the impairment or severity or prognosis")(emphasis added).

10

p. 1). For example:

    1.    A March 6, 2002 provocative discogram at L4-5, performed at ASC Alliance Surgery Center by Van Vu, M.D., showed "[p]ositive provocative discogram at LF-S1 with concordant pain." (There were other procedures at well at ASC Alliance Surgery Center in 2002, none of which were in the record).

    2.    A July 17, 2002 electrodiagnostic study at N&S Neurology Center and reviewed by Sanjay Chauhan, M.D., showed "[s]light right L5 radiculopathy with mixed acute and chronic re-enervation changes."

    3.    An August 3, 2002 percutaneous decompressive nucleoplasty under fluoroscopy was performed on claimant's L5-S1 disc by Ripu Arora, M.D. This followed Dr. Arora's pain management assessment on August 2, 2002, in which he concluded that claimant suffered "[d]iscogenic pain coming from LF-S1 with some radiculopathy bilaterally" and upon which he recommended decompressive nucleoplasty.

    4.    An August 21, 2002 MRI conducted at Pacific Hospital of Long Beach and reviewed by Nancy Keroles, M.D. established:

        a.    Disc desiccation at the L 1-2 level with central and left paracentral disc protrusion measuring 2 mm indenting the thecal sac.

        b.    Disc desiccation at the L4-5 level with posterior central disc protrusion measuring 2 mm, mildly indenting the thecal sac.

        c.    Disc desiccation at the L5-S1 level with posterior disc bulge measuring 3 mm.

Since it was Dr. Esposito who ordered all or most of the tests (Doc. 15, Attachment 1 at p. 2) they may well have informed his post-administrative hearing Questionnaire - a document explicitly not considered by the Appeals Council (AR 37) - in which he opined that claimant could sit for 2-3 hours and stand and/or walk for 2-3 hours over an eight hour period, i.e., a sedentary residual functional capacity. (AR 273).

Pursuant to 42 U.S.C. § 405(g), a case may be remanded where new evidence is material and there is good cause for the failure to incorporate such evidence into the record. As to materiality, the Ninth Circuit held in Booz v. Secretary, 734 F.2d 1378 (9th Cir. 1984), that a reviewing court must first determine whether there is a reasonable possibility that new evidence would have changed the outcome of the Secretary's determination had it been before him. Id. at 1380. In addition, the new evidence must be probative of the claimant's condition as it existed during the relevant time period - on or before the administrative hearing. See Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 511 (9th Cir. 1987); 42 U.S.C. § 416(i)(2)(G). The undersigned finds that both such preconditions apply here, particularly in light of the lumbar degenerative disc disease diagnosed by

11

1 claimant's primary treating physician. (AR 60). See Kemp v. Weinberger, 522 F.2d 967, 969 (9th Cir. 1975)("medical observations . . . made after the relevant period for disability under the Social Act . . . are nonetheless relevant here, where claimant has previously introduced evidence as to her history of osteoarthritis and where the new evidence reveals that claimant's present arthritic condition is the result of a *degenerative* process").

Finally, as to good cause, the Ninth Circuit held in Burton v. Heckler, 724 F.2d 1415 (9th Cir. 1984), that the requirement "is liberally applied" in the absence of prejudice to the Secretary, id. at 1417-18. This is particularly so where, as here, the new medical report was from claimant's primary treating physician with respect to a disease previously diagnosed by that physician. See Embrey v. Bowen, 849 F.2d 418, 423-23 & n.5 (9th Cir. 1988)(good cause exists to include, in the record, post-determination report by a claimant's doctor since, "[r]ather than attempting to raise new issues, the evidence represents the ongoing medical evaluation of a consulting physician who had already participated in the disability determination process").

In sum, the missing reports by Dr. Esposito (and the underlying diagnostic bases for his opinions) could have cast considerable light (1) on the objective nature of claimant's lumbar disc issues, (2) on the ALJ's determination of which medical reports to credit or discredit and (3) on the credibility of claimant's subjective complaints of pain and inability to stand, walk or sit for extended periods, i.e., whether he truly is limited to sedentary as opposed to light work. Remand therefore is required for consideration of these additional medical records.

**D. Claimant's Testimony**

The issue of whether claimant's testimony was properly considered by the ALJ need not, and rightfully cannot be considered given the remand that is required. Claimant's subjectively stated limitations need to be tested against a more complete objective record than was previously before the ALJ.

**CONCLUSION**

Claimant submits that the ALJ's errors should result in this Court either reversing the ALJ's decision or remanding the case. (Doc. 16 at p. 7). The Court has the discretion to remand the case for additional evidence and finding or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th

Cir. 1996). The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. Id. Remand is appropriate when additional administrative proceedings could remedy defects. Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989). In this case, further development of the record is necessary for a proper determination to be made.

Accordingly, it IS ORDERED that

1.  Claimant's social security complaint IS GRANTED;

2.  The matter IS REMANDED pursuant to sentence six of 42 U.S.C. § 405(g) for development of the record and further consideration, consistent with this decision, of claimant's status as disabled, including whether claimant's impairments are so severe as to preclude substantial gainful activity, 20 C.F.R. §§ 404.1520(d)(DIB), 416.920(d)(SSI); 20 C.F.R. § 404 Subpt. P App. 1; whether claimant is capable of performing work he has performed in the past, 20 C.F.R. §§ 404.1520(f)(DIB), 416.920(f)(SSI); and, if required, whether on the basis of claimant's age, education, work experience, and residual functional capacity, claimant can perform any other gainful and substantial work within the economy, 20 C.F.R.§§ 404.1520(g)(DIB), 416.920(g); and

3.  Judgment BE ENTERED for claimant Gilberto Bueno and against Defendant Jo Anne B. Barnhart.

IT IS SO ORDERED.

Dated:   **March 15, 2006**              /s/ Theresa A. Goldner
**j6eb3d**                                UNITED STATES MAGISTRATE JUDGE